UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LENORE VICTORIAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-00667-AGF |
| | ) | |
| WELLS FARGO HOME MORTGAGE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 30) to dismiss filed by Defendants Wells Fargo Home Mortgage ("Wells Fargo") and Deutsche Bank National Trust Company ("Deutsche Bank"), and the separate motion (Doc. No. 41) to dismiss filed by Defendant Chase Bank ("Chase"). For the reasons set forth below, both motions shall be granted in part and denied in part.

# BACKGROUND

Plaintiff's first amended complaint asserts seven claims against Defendants arising out of the foreclosure sale of her home.[1] As alleged in the amended complaint, on October 27, 2006, Plaintiff executed two promissory notes in connection with the purchase of her home: the first was in the amount of $408,862 ("First Mortgage") and second was in the amount of $102,216 ("Second Mortgage). Both mortgages were in

---

[1] The amended complaint alleges that the Court has diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

favor of MILA, Inc., DBA Mortgage and Investment and Lending Associates, Inc. ("MILA") and were secured by deeds of trust on the property. Plaintiff's monthly payment on each mortgage was $2,720.17.

Sometime after 2006, Wells Fargo became the servicer of the First Mortgage and Chase became the servicer of the Second Mortgage. Plaintiff does not allege the dates on which the mortgages were transferred to Wells Fargo and Chase, respectively.

In 2010, Wells Fargo and Plaintiff entered into a permanent loan modification with respect to the First Mortgage, which reduced Plaintiff's monthly payment to $1,889.65.

By March of 2012, Plaintiff was more than 60 days delinquent on her First Mortgage and attempted to obtain another modification of her payment terms under the federal Home Affordable Modification Program ("HAMP"). Wells Fargo is a participating servicer under a HAMP Service Participation Agreement with the federal government. Wells Fargo received documents from Plaintiff and began to process Plaintiff's request for HAMP modification over a period of several months.

On October 11, 2012, Wells Fargo sent Plaintiff a letter stating that she was approved to enter into a Trial Period Plan under HAMP, which was the first step toward qualifying for a loan modification. Plaintiff accepted the offer to enter into the Trial Period Plan by calling Wells Fargo within 14 days of the date of the letter and making her first trial period payment.

Through a title report received on November 27, 2012, Wells Fargo became aware that there were other liens on Plaintiff's property, in addition to the First Mortgage.

On December 27, 2012, after Plaintiff had made two payments under the Trial Period Plan, Wells Fargo notified Plaintiff that "she did not meet the requirements of HAMP because there [were] additional liens on [her] property." (Doc. No. 24 at 12.)

Plaintiff made all three trial period payments that would be required under the Trial Period Plan, but Wells Fargo did not approve her for permanent HAMP modification. Plaintiff filed an appeal of Wells Fargo's decision, which Wells Fargo denied.

Plaintiff alleges that in June of 2014, she repeatedly asked Chase to sign a subordination agreement with respect to the Second Mortgage so that Wells Fargo would consider Plaintiff for a permanent HAMP modification. Chase is also party to a HAMP Service Participation Agreement with the federal government. Plaintiff alleges that Chase refused to sign a subordination agreement unless and until Plaintiff entered into a new payment plan with respect to the Second Mortgage.

On October 24, 2014 Chase advised Plaintiff that it had released the Second Mortgage, and Wells Fargo proceeded with foreclosure on Plaintiff's property. On December 15, 2014, Deutsche Bank purchased the property at a foreclosure sale, for $450,000.

Wells Fargo has moved to dismiss Counts I and V[2] of Plaintiff's complaint as to it, and Chase has moved to dismiss all of Plaintiff's claims as to it (Counts IV-VII).

---

[2] Wells Fargo and Deutsche Bank initially moved to dismiss all claims against them. But because the Court struck certain documents attached to the motion, these Defendants state in their reply brief that they no longer seek to dismiss Counts II, III, IV,

Plaintiff asserts breach of contract claims against Wells Fargo (Count I) and Chase (Count IV) based on these Defendants' alleged breach of their HAMP Service Participation Agreements with the federal government. Plaintiff claims to be a third party beneficiary of the Service Participation Agreements. Plaintiff alleges that Wells Fargo and Chase breached the Agreements by failing to adhere to HAMP guidelines. Specifically, Plaintiff alleges that Wells Fargo failed to adhere to HAMP guidelines with respect to its loan modification obligations. Plaintiff alleges that Chase violated HAMP guidelines by failing to comply with Plaintiff's requests to subordinate the Second Mortgage to make way for a HAMP modification.

In Count V, Plaintiff asserts Fair Debt Collection Practices Act ("FDCPA") claims against Wells Fargo and Chase, alleging that these Defendants acted as debt collectors within the meaning of the FDCPA and that that they used false, deceptive, misleading, and unfair or unconscionable means to collect the debts owed by Plaintiff.

In Count VI, Plaintiff asserts that Wells Fargo and Chase's actions "in connection with the sale" of their mortgage services also violated the Missouri Merchandising Practices Act ("MMPA"). Plaintiff alleges that Chase violated the MMPA by failing to coordinate with Wells Fargo to help Plaintiff qualify for a permanent loan modification, failing to subordinate its liens to allow for such modification, and agreeing to take a payment of $14,000 in full settlement of Plaintiff's loan obligations and then insisting on more than double that amount.

---

and VII as to them. Thus, the only remaining claims at issue in these Defendants' motion are Counts I and V, which are asserted solely against Wells Fargo.

In Count VII, Plaintiff requests a declaration that Plaintiff is the fee simple owner of the property; that Defendants have no right or title to, or interest in, the property; that the foreclosure sale is void, and that Defendants do not have the right to collect payments from Plaintiff or to assert any right to Plaintiff's property. Alternatively, Plaintiff requests that the Court declare the respective right and title in the property and order Wells Fargo to grant Plaintiff a permanent HAMP modification.

In their motions to dismiss, Wells Fargo and Chase both argue that Plaintiff lacks standing to allege a claim for breach of the HAMP Service Participation Agreements (Counts I and IV). Plaintiff is not a party to the Service Participation Agreements, and Wells Fargo and Chase cite numerous cases holding that HAMP Service Participation Agreements do not confer standing upon borrowers, as third-party beneficiaries, to assert claims for breach.

With respect to Count V, both Wells Fargo and Chase argue that Plaintiff fails to state a claim under the FDCPA because mortgage servicing companies are not debt collectors within the meaning of the FDCPA if they obtained the loan for servicing before default. Wells Fargo and Chase note that Plaintiff fails to allege that the loans were in default at the time of transfer here.

Regarding Count VI, Chase argues that Plaintiff fails to state a claim under the MMPA because she has failed to identify any actionable fraud or unlawful act committed by Chase in connection with the sale of a loan, and because she has not pleaded any ascertainable loss.

Finally, with respect to Count VII, Chase argues that Plaintiff fails to state a claim for declaratory judgment to quiet title because she cannot show that she has superior title to the property, when she was admittedly in default of her payment obligations.

Plaintiff responds that she has standing to bring Counts I and IV as a third party beneficiary, under general principles of Missouri contract law, because the intent of the HAMP Service Participation Agreements was to benefit homeowners such as Plaintiff, who are at risk for foreclosure.

Regarding Count V, Plaintiff argues that, at this stage, she has sufficiently pleaded that Wells Fargo and Chase are debt collectors under the FDCPA. Plaintiff acknowledges that if the loans were not in default at the time they were transferred to Wells Fargo and Chase, her FDCPA claim may fail. But Plaintiff argues that she does not have the burden to plead around such a defense.

Regarding Count VI, Plaintiff argues that she has adequately stated an MMPA claim against Chase by pleading that Chase serviced the Second Mortgage in bad faith. Plaintiff contends that she has also adequately alleged an ascertainable loss. Plaintiff points to her allegations that, as a result of Chase's actions, she lost her ability to obtain a permanent loan modification from Wells Fargo, she made payments to Chase to which Chase was "not entitled," and she lost her ability to refinance her loans or otherwise mitigate her losses.

With respect to Count VII, Plaintiff argues that she intended to state an action for declaratory judgment, not an action to quiet title. Plaintiff argues that she has sufficiently pleaded a declaratory judgment action by alleging that she has a legally protected

ownership interest in the property and that an actual controversy exists between the parties as to the rights, title, and interests of each in the same property.

In the alternative, Plaintiff requests leave to amend to correct any deficiencies in her pleading.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

**Breach of HAMP Service Participation Agreements (Counts I and IV)**

"The vast majority of courts to examine this issue have held that a homeowner is not an intended third-party beneficiary of the [HAMP] servicer participation agreement between his or her servicer and the government and does not have the right to enforce the agreement against the servicer." *In re Newell*, No. 11-33861-EPK, 2012 WL 909200, at *2 (Bankr. S.D. Fla. Mar. 15, 2012) (collecting cases); *see also Wigod v. Wells Fargo*

*Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012) (finding that district courts around the country have "correctly . . . foreclos[ed] claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs"). Likewise, "Eighth Circuit courts have . . . declined to recognize a private right of action based on a borrower's status as a third-party beneficiary of HAMP." *Guthrie v. Bank of Am., Nat. Ass'n*, No. CIV. 12-2472 ADM/LIB, 2012 WL 6552763, at *4 (D. Minn. Dec. 14, 2012) (collecting cases).

The Court agrees with these decisions and finds that Plaintiff, as neither a party to nor intended third-party beneficiary of the Service Participation Agreements, lacks standing to sue for breach of such Agreements. As such, Counts I and IV will be dismissed with prejudice.

**FDCPA (Count V)**

"[T]he FDCPA imposes civil liability on debt collectors for certain prohibited debt collection practices." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 817 (8th Cir. 2012). As such, to state a claim under the FDCPA, a plaintiff must, as a threshold matter, allege some facts plausibly demonstrating that the defendant is a "debt collector." *Marshall v. Deutsche Bank Nat. Trust Co.*, 445 F. App'x 900, 901 (8th Cir. 2011); *Johnson v. PHH Mortgage Serv. Ctr.*, No. 4:12-CV-2105-RWS, 2012 WL 5932806, at *3 (E.D. Mo. Nov. 27, 2012).

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). But the FDCPA limits this definition. Among other limitations, a debt collector does not include "any officer or employee of a creditor while,

in the name of the creditor, collecting debts for such creditor." *Id.* § 1692a6(A). Likewise, it does not include "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person. . . . ." *Id.* § 1692a(6)(F). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Harvey v. CitiMortgage, Inc.*, No. 4:10CV551 TIA, 2011 WL 1226973, at *4 (E.D. Mo. Mar. 29, 2011) (quoting *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds,* 761 F.2d 237 (5th Cir. 1985)).

In this case, Plaintiff's complaint contains no plausible, non-conclusory allegations that Wells Fargo and Chase are "debt collectors" within the meaning of the FDCPA. The complaint does not plausibly allege that the loans were in default at the time they were transferred to Wells Fargo and Chase. According to Plaintiff's own allegations, Wells Fargo and Chase fall within a relevant exclusion of "debt collector" under the FDCPA, and Plaintiff does not allege any facts to avoid that exclusion. *See Spreitzer v. Deutsche Bank Nat. Trust Co*., 610 F. App'x 737, 743 (10th Cir. 2015) (affirming dismissal of FDCPA claim where "the Amended Complaint contain[ed] no plausible allegations that the Bank Defendants obtained the Note while it was in default—allegations that would be necessary to skirt the relevant exclusion from the FDCPA's definition of 'debt collector' in 15 U.S.C. § 1692a(6)(F)"); *Roth v.*

*CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (holding that "the amended complaint d[id] not allege that CitiMortgage acquired Roth's debt after it was in default and so fail[ed] to plausibly allege that CitiMortgage qualifies as a debt collector under FDCPA") (citing 15 U.S.C. § 1692a(6)(F)(iii)).

Because Plaintiff fails to plausibly allege that Wells Fargo and Chase are debt collectors under the FDCPA, Count V will be dismissed. However, the Court will dismiss this claim without prejudice to Plaintiff's opportunity to seek leave to amend her complaint if she believes she can cure the pleading defect.

### **MMPA (Count VI)**

The MMPA makes unlawful "[t]he act, use or employment . . . of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale . . . of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. "[W]hen the operative transaction is the procurement of a loan, the 'sale' is not complete when the lender extends the credit, but continues throughout the time the borrower is making payments on the loan. *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 407 (Mo. 2014). Therefore, "[t]he enforcement of the loan's terms is 'in connection with' the sale of the loan because the sale continues for the life of the loan." *Id.; see also Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014) ("Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done 'in connection with' the original procurement of the loan.").

"[L]oan modification negotiations, however, [are] not 'in connection with' the sale of this loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan." *Watson*, 438 S.W.3d at 408; *see also Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 889 (8th Cir. 2014) (holding that "any statement by Wells Fargo with respect to the availability of a loan modification is not actionable under the MMPA").

Additionally, a "necessary element" of an MMPA claim is that the plaintiff "suffered an ascertainable loss of money or property . . . as a result of the act declared unlawful under section 407.020." *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015).

In this case, Plaintiff's allegations concerning Chase's failure to help Plaintiff qualify for a permanent loan modification from Wells Fargo do not state a claim for a violation of the MMPA because such actions were not "in connection with" the sale of the loan. *Watson*, 438 S.W.3d at 408.

Plaintiff's further allegations that Chase falsely represented that a payment of $14,000 would fully settle Plaintiff's loan obligations may sufficiently state a false or deceptive action taken "in connection with" the sale of the loan. However, Plaintiff has not plausibly alleged an ascertainable loss resulting from such action. There is no dispute that Plaintiff owed at least $14,000 on her loan. Plaintiff baldly alleges that, as a result of Chase's representations, she made loan payments to which Chase was not entitled. But Plaintiff has failed to plead any facts suggesting that Chase was not entitled to these payments. *See Crouch v. Bussen Quarries, Inc.*, No. 4:14CV1733 CDP, 2015 WL

4959517, at *6 (E.D. Mo. Aug. 19, 2015) (noting that on a motion to dismiss, the court "properly disregards unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Because Plaintiff has failed to plausibly allege that Chase engaged in unlawful conduct in connection with the sale of a loan that resulted in an ascertainable loss to Plaintiff, the Court will dismiss Count VI as it relates to Chase. Again, this dismissal will be without prejudice to Plaintiff's opportunity to seek leave to amend her complaint if she believes she can cure the pleading defect.

**Declaratory Judgment (Count VII)**

Plaintiff's request for a declaration that she has superior title to the property is based on her claim that she was entitled to a permanent loan modification because, among other things, she complied with all requirements of Wells Fargo's Trial Period Plan. In other words, Plaintiff's request for declaratory relief in Count VII is intertwined with her yet-to-be-resolved claim in Count II. As such, it would be premature to dismiss Plaintiff's claim for declaratory judgment at this stage, and the Court will deny Chase's motion to dismiss Count VII.

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part**, as set forth above. (Doc. Nos. 30 & 41.) Counts I and IV are **DISMISSED with prejudice**. Count V is **DISMISSED without**

**prejudice**. Count VI is **DISMISSED without prejudice** as to Chase only. In all other respects, the motions are **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2015